United States District Court
Southern District of Texas
**ENTERED**
October 17, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| TRACIE MICHELLE COX, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:21-cv-00276 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Tracie Michelle Cox ("Cox") seeks judicial review of an administrative decision denying her applications for disability insurance benefits under Title II and Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Cox and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"). *See* Dkts. 12–13. After reviewing the briefing, the record, and the applicable law, Cox's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings.

## BACKGROUND

Cox filed applications for disability insurance benefits under Title II and Title XVI of the Act on September 3, 2018, alleging disability beginning on February 1, 2017. Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Cox was not disabled. Cox filed an appeal with the Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g).[1] *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

---

[1] Section 405(g) requires a plaintiff to present her claims in the district court within 60 days after the mailing of the notice of a final decision, or within such further time as the Commissioner may allow. *See* 42 U.S.C. § 405(g). The Notice of Appeals Council Action—the "notice of a final decision"—provides that the "60 days start the day after you receive this letter" and assumes receipt "5 days after the date on it" unless otherwise shown. Dkt. 1 at 6. *See also* 20 C.F.R. § 422.210(c) ("For purposes of this section, the date of receipt of notice of denial of request for review of the presiding officer's decision or notice of the decision by the Appeals Council shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary."). Cox's notice is stamped "Received Jan 26 2021." *Id.* Cox instituted this action on October 13, 2021—260 days after receiving notice of a final decision. All that said, expiration of the statute of limitations is a waivable affirmative defense. *See Weinberger v. Salfi*, 422 U.S. 749, 764 (1975). The Commissioner, having not raised the issue in her motion for summary judgment, has waived this defense.

Under the Act, "a claimant is disabled only if she is incapable of engaging in *any* substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id*. Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id*.

## THE ALJ'S DECISION

The ALJ found at Step 1 that Cox had not engaged in substantial gainful activity since February 1, 2017. *See* Dkt. 7-3 at 14.

The ALJ found at Step 2 that Cox suffered from "the following severe impairments: fibromyalgia, anxiety, depression, obesity, neuropathy, chronic fatigue syndrome, and restless leg syndrome." *Id*.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Cox's RFC as follows:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds. The claimant can occasionally,

3

> balance, stoop, kneel crouch and crawl. She should avoid concentrated exposure to unprotected heights. The claimant can frequently handle, and finger bilaterally. She can occasionally push, pull, and operate foot controls bilaterally. The claimant can remember and follow simple instructions. She can perform the tasks assigned, but not at a production rate pace; however she can meet the end of day work goals. The claimant can have occasional contact with co-workers, supervisors, and the general public. She can occasionally adapt to rapid changes in the workplace.

*Id.* at 18.

At Step 4, the ALJ found that Cox is unable to perform any past relevant work. Nonetheless, the ALJ elicited testimony from a vocational expert ("VE") that "there are jobs that exist in significant numbers in the national economy that [Cox] can perform." *Id.* at 24. Based on the Medical-Vocational Rules, the ALJ explained that Cox is not disabled. *See id.* at 24–25.

## DISCUSSION

This social security appeal raises two issues: (1) whether the ALJ improperly evaluated the opinions of the consultative examiner, Lowell Adams, Ph.D.; and (2) whether the ALJ improperly evaluated the opinions of Cox's treating physician, Michael G. Neret, M.D. I need to reach only the first issue.

Because Cox filed for benefits "on or after March 27, 2017," the ALJ was required to apply the new regulations. 20 C.F.R. §§ 404.1520c, 416.920c. Through the new regulations, the Commissioner revised the standards and procedures for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule. As such, "ALJs are no longer required to give controlling weight to the opinions of treating physicians." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *4 (S.D. Miss. Aug. 11, 2021) (quotation omitted). Instead, the ALJ considers the persuasiveness of medical opinions from different medical sources. *See* 20 C.F.R. § 404.1520c(b)(2). In evaluating persuasiveness, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion. *Id.*

4

§ 404.1520c(c). The most important factors in evaluating persuasiveness are supportability and consistency. *See id.* § 404.1520c(b)(2).

With respect to "supportability," "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, No. 120-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "As for consistency, the new rules provide that the greater the consistency between a particular medical source/opinion and the other evidence in the medical record, the stronger that medical opinion becomes." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(3)). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.*

At a minimum, an ALJ's persuasiveness explanation should "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021) (cleaned up). "Stated differently, there must be a discernible logic bridge between the evidence and the ALJ's persuasiveness finding." *Pearson*, 2021 WL 3708047, at *5 (quotation omitted).

In assessing Cox's functional capacity, Dr. Adams made several observations that are relevant here. First, he observed that Cox's "ability to recall and use working memory to perform work activities appeared to be significantly impaired." Dkt. 7-11 at 58. Second, he observed that "[c]oncentration skills appeared to be a moderate concern." *Id.* at 59. Third, he assessed that "[m]aking work-related decisions, which involve practical/social judgment, would likely be a concern." *Id.* Fourth, he noted that Cox has had "significant difficulties relating to co-workers and supervisors." *Id.* Finally, he noted that Cox's "medical and psychiatric

5

concerns and past behavioral patterns[] will likely affect her ability to regulate emotional responses and adequately control behavior and well[-]being in a work setting." *Id.*

Cox asserts that the ALJ's RFC does not properly account for these restrictions and that the ALJ failed to provide an adequate rationale for rejecting these restrictions. I agree. The following is the only analysis the ALJ provided of Dr. Adams's report:

> I find [the observations noted by Dr. Adams] somewhat persuasive as [they are] consistent with the other evidence of record, but there is not much quantification consistent with the Social Security Administration Regulations and requirements.
>
> However, [the observations noted by Dr. Adams] do[] support the limitation provided in the assessed residual functional capacity outlined above. The findings in this opinion are consistent with remembering and following simple instructions; can perform the tasks assigned, but not always a production rate pace. However, she can meet the end of the day work goals, can have occasional contact with co-workers, supervisors and the general public, and can occasionally adapt to rapid changes in the workplace.

Dkt. 7-3 at 22.

The ALJ does not explain what she means when she says "there is not much quantification." *Id.*[2] More importantly, the ALJ does not explain how significantly impaired working memory, impaired concentration skills, and a concerning ability to make work-related decisions support the ability to "meet the end of the day work goals." *Id.* Boiled down to its essence, the ALJ's discussion of Dr. Adams's report equates to nothing more than a conclusory statement that the record supports her finding. The law requires more than that.

Furthermore, the ALJ's recounting of Dr. Adams's report is, at least in part, not even accurate. For example, where Dr. Adams states that Cox's concentration skills are "a moderate *concern*" (Dkt. 7-11 at 59) (emphasis added), the ALJ states

---

[2] Nor does the Commissioner offer in her response a citation to Social Security Administration Regulations and requirements that would support this statement.

that Cox's "concentration skills appeared to be moderate" (Dkt. 7-3 at 22), and that she retains the ability to "concentrate for extended periods." *Id.* at 23. Finally, the ALJ copies and pastes Dr. Adams's finding regarding Cox's significant recall and working memory impairment into a paragraph that begins with: "I find the opin[ion] of the DDS medical consultant (mental) persuasive." Dkt. 7-3 at 23. Yet she offers no discussion of how this significant impairment relates to the RFC. *See id.* Absent further explanation from the ALJ, the disconnects between Dr. Adams's report and the ALJ's findings make it impossible for me to discern a logic bridge or undertake a meaningful review. Thus, I find that the ALJ did not engage in the analysis required by the regulations.[3]

The ALJ denied Cox benefits at Step Five based, in part, on consideration of Cox's RFC. A proper evaluation of the medical opinions might lead to a more limited RFC. Accordingly, the case must be remanded for a proper evaluation of the medical opinions and, possibly, a reevaluation of the RFC.

## CONCLUSION

For the reasons provided above, Cox's motion for summary judgment (Dkt. 12) is **GRANTED**, and the Commissioner's motion for summary judgment (Dkt. 13) is **DENIED**. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

SIGNED this 17 day of October 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

[3] The Commissioner argues that "Dr. Addams's [*sic*] opinion is also not consistent with Plaintiff's lack of treatment for her mental health impairments" or her daily activities. *See* Dkt. 13 at 8. These are arguments the ALJ could have made, but did not. Coming from the Commissioner on summary judgment, they are nothing more than impermissible *post hoc* rationalizations. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).